Thank you, Your Honor. Richard Raleigh for CliniComp. May it please the Court. What's your best evidence for why CliniComp would be able to compete for a contract of this size and scope? Your Honor, this is a good question. In this case, a pre-award, pre-proposal bid protest, the evidence is that they have a non-trivial competitive injury because they are currently an EHR provider, one of the VA's EHR providers, so they're an incumbent for some of these services. Additionally, the evidence of the record… How many clinics? I'm sorry? How many clinics? I believe that they have around 100, and the evidence of the record is that there's 1,600 total VA-wide. They also have a commercially available product, the record establishes, that would meet the VA's interoperability needs. And finally, they have a non-trivial competitive injury because it would result in loss of their business. Several cases have established that non-trivial competitive injury, that is prejudice, economic harm, can be established where you're going to lose work. So my question was, is that your best evidence that they'd be able to compete for a contract of that scope and size? Your Honor, there is not a yardstick that has been established, and this Court's correct opinion in Weeks Marine recognizes that when the agency and then the Court of Federal Claims reviewing is looking at a contract, and there is no solicitation, there's no technical specifications, there's no requirements that have yet been set forth, that is, it's a pre-proposal situation, unlike Orion. In other cases, it's difficult to evaluate what you could meet. Here, there is no prohibition on subcontracting. So, as a matter of law, one of the things When did you first raise this argument about, you're small, but you could have subcontracting? Your Honor, I think that the first time it was actually mentioned was in rebuttal in the oral argument, but subcontracting, unless it's limited because there's some small business set aside, you have the right to subcontract. In fact, the administrative record establishes that Cerner is actually the subcontractor to Leidos on the DOD contract. So subcontracting, you can do as a matter of law. Did you submit any evidence to show that Clinicom would be capable of subcontracting the award? Your Honor, there's no... Do you have experience in managing similar types of subcontracting? There is no evidence in the administrative record as such. Are you aware of our most recent pre-award case, CGI Federal v. United States? I'm not immediately familiar with all of the facts of the case. I know that... You know we clearly apply a Weeks Marine standard to a pre-bid contract. Yes, sir. I know that there is... Any reason to think that CGI shouldn't be persuasive here? Your Honor, I believe that Weeks Marine speaks correctly to the standard that should be applied and that Clinicom is a qualified bidder and that it is someone who's not a mere intermeddler. Do you dispute the proposition that even under Weeks Marine, put aside Myers, you had to be a qualified bidder and in particular that that means... I guess that's one question. The second is that that means you had to show that you were capable of handling the job of this magnitude. Your Honor, I believe... I agree with the court that Clinicom has a duty to show it's a qualified bidder. I do not believe that that means it has to essentially put in the administrative record a proposal to show all of its qualifications for a hypothetical contract that has never been put to a solicitation. Were you able to put in evidence in the Court of Federal Claims in support of your standing? We did, Your Honor. The declaration... So you don't have a dispute here about somehow the record on which the Court of Federal Claims made its decision having been improperly truncated? That's correct, Your Honor. We don't contend that we didn't have an opportunity to put information in the record. However, back to the yardstick argument that I've made, if you don't have technical requirements that show what this contract is going to require, then you can't create a hypothetical proposal to meet the requirements of the contract. When you show that you're a qualified bidder, what do you show? You show that you're not disqualified. There's a number of cases that talk about if you aren't a small, disadvantaged, veterans-owned business, then you're not qualified. So you're not legally disqualified. Correct. But isn't there also a requirement that you have to show that, as a factual matter, you have the ability to do this quite huge job? I contend that Clinicomp does have the ability to do it. For one thing, they have established that they have a commercial product that could meet the needs. The VA never evaluated that product. It's somewhat like the Planteer case that was a pre-award case. The Court of Federal Claims applied Weeks Marine and said Planteer had offered a commercial product that it said could meet the needs, or at least some of them, and the government didn't evaluate that. The VA did not evaluate the product that, in a June 29, 2017, letter to the VA as part of the VA agency-level protest, Clinicomp said we've got this product. Where does Clinicomp use that product? Clinicomp's work is primarily with government health facilities, and it uses the product across those lines. In fact, that brings up a good point, Your Honor. What kind of government health facilities? DoD and VA, among others. Do VA have experience with that product? They didn't evaluate this specific product, to my knowledge, and there's nothing in the administrative record that they evaluated this particular product that they're offering. I don't believe it's the product that is used at the clinics that the Court mentioned, but there's no evidence in the record as to that. But Chris Hohenschaul, the CEO of Clinicomp, who is a company that provides EHR services to both DoD and VA, says that it can provide this interoperability. Again, this is back to the issue of can you evaluate, if you're the agency, whether or not this proposed prospective bidder could meet the requirements if you don't have a solicitation yet? And the VA here was saying what we want to do is adopt whatever DoD has, and at the time that is being discussed, DoD hadn't rolled out this system across its entire agency. So there's no proof in the record that Clinicomp could provide this services to the entire VA, and there's no proof that Cerner could. No one has ever performed this contract, but they do perform services for VA and DoD that are EHR services. I'm not sure that the scope of the contract is clearly defined or the technical requirements. There's one case I can recall, Magnum Opus, that involved health care services, and I think one distinction here is we're talking primarily about providing a software system. So your Honor is correct. It would be a bigger scope to perform services at 1,600 clinics versus 100. But if you're providing nurses, you're providing people, that's one thing. If you're providing a robust software system to a larger group, that is a different thing. These are the types of things that an agency could evaluate if it did compete this contract. Did I answer the Court's questions concerning the standing issues? I wanted to turn to the issue of the public interest exception. Clinicomp contends that the VA was precluded from invoking the public interest exception. That is because other exceptions apply. In particular, one responsible source, an unusual and compelling urgency. Additionally, they failed to show with clear and convincing justification how foregoing competition would advance the public interest. Certainly, providing health care benefits to veterans is in the public interest. All EHR services provide health care benefits. But how in this case... Interoperability is in the public interest as well. You agree with that? Absolutely, Your Honor. I do. And that's why Chris Hohenschild's declaration where he says that we can provide a system to provide enhanced greater interoperability that VA seeks is important. But in this case, they didn't explain how foregoing competition advances the public interest. Why they couldn't have competed this contract or at least undertaken market research, the kind of things that was discussed in the Planteer case, gone out and looked to see, evaluate this Clinicomp product, evaluate the Cerner product, why it advances the public interest to forego competition itself. The court below was correct in saying that courts can review the issue of the invocation of the public interest for the reasons that were correctly stated in spherics. And the test of determining whether the invocation was correct, that's a procedural thing, and the court was correct there. The court erred in determining that the public interest had been... that Cerner and the VA, or rather the VA, had explained and clearly and convincingly justified the invocation of the public interest. Do I remember right, your argument about judicial reviewability here is that even though the statutory language has quite strong discretionary language, it has been implemented in regulatory or other terms that actually do provide standards that a court can use to determine whether the exercise of discretion is proper. That's correct, your Honor. I agree completely. Did Clinicomp respond to the RFI? I'm sorry? Did Clinicomp respond to the RFI? Clinicomp did. There were two RFIs, your Honor. You're correct. And Clinicomp did not respond to either. Neither RFI was directed at this particular option. The first RFI related to commercialization of VISTA, which is the VA's own EHR system, and the description of what that RFI was talking about is in Appendix 11-796. The second one related to a user interface. So essentially, the doctors walk around with an iPad and enter data, and that goes into the EHR system that would be across the whole VA, the VISTA system. So it didn't respond to either of those two, but we contend that's not determinative of anything because this is not the option that the VA went for. That's not what this contract is about. I understand the record shows that Cerner responded to the second, but not the first, is my understanding. I may have misstated earlier. The two exceptions that we contend apply to this situation are one responsible source, which is 6.302-1, and unusual compelling urgency. And even though the VA says that it was invoking the public interest exception, it's precluded by the provisions of 6.302-1 and 6.302-7 from doing so because what they're really doing is saying there's one responsible source. We want Cerner. That's what the DOD has. And we contend that that is pretext when they're saying that public interest is what we're going under. It's really one responsible source. You're in your rebuttal, so I'm going to move on to the second. Thank you, Your Honor. Thank you. May it please the Court. Clinic Health is protesting the VA's decision to conduct its procurement for its new comprehensive enterprise-wide electronic health record system on a sole source basis rather than a competitive basis. Given that the main requirement is to use the same system as the Department of Defense has, isn't that essentially limiting to one bitter sermon?  So you acknowledge that no one else would have standing then to challenge this? No, Your Honor. If a plaintiff comes in and says, we don't agree with the Secretary that this single common system is needed, that we can provide the comprehensive enterprise-wide electronic health record system that you need, and the single common system requirement is irrational or illegal or something like that, assuming they can prove that they can provide the comprehensive enterprise-wide electronic health record system, that would give that company standing to challenge the decision. And how do they prove that? You're just saying we can subcontract it out. That's not enough. Simply saying that, no. They could demonstrate perhaps that they've provided comprehensive electronic health record systems to similar-sized organizations. So the size here, the size difference is, we talked about it before with Judge Wallach, 100 versus 1,600? My understanding is that they support 44 facilities at the VA and 56 for DOD, so 100 versus 1,600. This will be enterprise-wide for the VA, so approximately 1,600 care sites. Intuitively, for a product like this, why does that scaling up matter? What's the challenge in scaling up? There may be an utterly obvious answer, in which case it won't take very long. For one thing, they haven't demonstrated that they've provided a comprehensive electronic health record system to anyone, let alone anyone the size of the VA. So there's different facets to it, inpatient, outpatient, and they haven't demonstrated they provide that full scope to anyone. As far as why it can't be scaled, I don't know exactly. That's their burden to demonstrate that their product is in fact scalable. I guess I'm just interested in something intuitive. If somebody said in the early days to WordPerfect, you're serving only 100,000 lawyers with your word processing program, and can you really supply it to a million? They would say, we're just going to copy it. What's the difference? Maybe that could be in terms of the software. I don't know. That's plaintiff's burden to demonstrate that it is scalable. But this goes beyond simply providing software. The DNF states that the VA is seeking a contract for the full scope of services. This includes integration, configuration, testing, deployment, hosting, organizational change management, training, and sustainment, and licenses necessary to deploy. What's the status of the contract now? It has not been awarded yet. It goes well beyond simply handing over a CD to put into your computer. That's all that was asked for? Yes. Because Clinicomp hasn't demonstrated that it's qualified to provide a comprehensive enterprise-wide. Is Clinicomp even a prospective bidder? Well, they stated that they would bid if such a competition were held. So we haven't disputed. They haven't responded. Your opposing counsel said they didn't respond to either RFI. Does that matter? That's true, Your Honor. We didn't make an argument based on that because, well, I'm not sure I'd agree with everything that Mr. Rowley said. But we agree that those two RFIs didn't specifically seek a commercial replacement of VISTA. So in that sense, we didn't make an argument based on that. One of the things you're saying is Clinicomp fails to demonstrate they could perform a contract of this magnitude. Has anyone ever successfully made such a demonstration? Well, Cerner is currently implementing the new system for DOD. So that's an example that might be relevant. I don't know exactly the size of the VA. It may be less. In the Grant Thornton report, it's tab 7 of the administrative record. I think it's around 10233 to 10-something. It mentions in the cost section about Kaiser Permanente might be another one that Grant Thornton considered similar in scope. So there could be other examples that might not be exact to the VA. Those are ones in which a doc at a military base enters information about someone who's been wounded. And when they transfer over to VA, it would pop up. In other words, it's integrated patient information, electronic information. I don't think anyone's ever done this single comment system between two entities the size of the VA and the DOD before. I think Secretary Shulkin may have even said this. This has never been done before in his press conference. So in that sense, no. As far as that aspect goes, I don't believe this has been done before. It's failed a lot of times. You could show perhaps the possibility of that by demonstrating your size. For example, Cerner's, I think, states they have 24,000 associates or something like that, billions of dollars of revenue. Things of that nature might demonstrate that, hey, we've done this at a little bit of a less scale. We can scale up based on that. Clinicomp, on the other hand, has not demonstrated that they're anywhere in that realm. This is simply not a close case on whether they're a qualified bidder. Are we reviewing under a clear error standard the Court of Federal Claims determination that Clinicomp did not establish that it was a qualified bidder? Yes, Your Honor. That's correct. It goes to prejudice, and this Court stated on different occasions that prejudice is clear error. I think Diaz's is the case we cited in our brief. Do you agree the Winks-Marine standard applies? We don't agree that the Winks-Marine standard applies. Ultimately, it doesn't really matter in this case because Clinicomp needs to demonstrate that it's a qualified bidder, whether it's under the, quote, non-trivial competitive injury test or the substantial test. Exactly. I mean, Winks-Marine itself emphasized the government's concession in that case, that Winks-Marine did have the capability and the financial and technical capability to perform the contract that was at issue. We don't see any reason why— What about the duty to perform market research? Well, that doesn't have any relevance to the standing inquiry, but as far as any duty to perform market research, the government conducted market research. It did conduct the two RFIs, while not directly on point to this issue relate to VISTA. It also commissioned Grant Thornton to look at various options for specifically replacing VISTA, three of which were commercial off-the-shelf options. And, in fact, they chose a commercial off-the-shelf option by choosing Cerner, so that claim failed. But besides being irrelevant to standing, it fails on the merits as well. You know, that wasn't a throwaway that I said they've tried before. You said in the red brief VA and DOD have been trying for 20 years. That's true, Your Honor. They've been trying to make their systems more interoperable for 20 years, and ultimately that was—to get to the merits a little bit, I suppose—that was the real basis of this decision, is that we've been trying to make our separate systems interoperable for 20 years. We've been trying to get them to talk to each other in a way that gives us the highest level of care for veterans, and it simply hasn't happened. That's my hypo, the person who's wounded. The Army's taking care of them and then transfers them over, and it sure would help if the VA could read. Yeah, it would be great if the VA could simply look at the same record that DOD's looking at. Here, instead, what we've gotten to, which is an improvement, is this joint legacy viewer system where that information can be viewed in read-only and transferred over in that sense, but it doesn't allow for that complete seamless care that the VA and DOD are looking for, and it's specifically stated in the DNF that if we don't— as I understand what you're saying, this envisions the VA doctor effectively being able to talk to the Army doctor. In a sense, yes, through the records where you're operating off of a single common system that you would be able to enter something in, and then it would appear at DOD or vice versa that you would be operating off essentially the same system. So I see that my time's almost up, so I respectfully request that the Court affirm the judgment of the trial court. Thank you. Good morning, Your Honors. May it please the Court. I'd like to start with the question about the single common system. I want to emphasize that with respect to standing, it's critical, and it's critical to the DNF that the VA issued. It's not just that they want interoperability, because that, as we've seen in two separate systems, while improving will never quite get you to the seamless care that you want. So in terms of talking to each other, I think of interoperability more as kind of the playing telephone game, whereas the single common system would be one person having all the information. There's liable to be breakdowns every time you transfer from one person to another. There's liable to be data latency lags, and so on and so forth. So that's why the VA, surveying the history and all of the failures that went before, decided it was critical for veteran and active military care to have one seamless single common system. And so I want to focus the rest of my remarks today on the question of reviewability, because I think this case exemplifies exactly the type of discretionary decision that Congress has committed to the agency. What about the regulations that Judge Toronto discussed with you? Certainly. So the regulation in question is 1.704 of the FAR. And among other things, it says here's the form that the DNF has to take. It has to be signed, it has to have an expiration date, and it has to include clear and convincing evidence to support the decision. And here's why that doesn't provide a standard. If you look at the Steenhold decision, not from this court but from the D.C. Circuit, but it's, I submit, very instructive. In that case, a similar argument was made that the evidentiary standard there, substantial evidence, provided enough law to apply. And the court looked at it and said, no, that's just a standard of review, a standard of evidence. It doesn't ultimately provide a substantive standard, which is what the Supreme Court in Webster and this court in Allman Brothers and other cases has held. And so when you look at that test, we submit that this is squarely within the agency discretion for three primary reasons. First, the language of the statute itself, determined in the public interest, is identical to the language in the statute in Claybrook where it said, determine in the public interest. Now, it was another statute dealing with another topic, but the D.C. Circuit in that case looked at it and said, that indicates not just that you determine, not just that it is in the public interest, but that the agency must determine that it is. And the court said that's just like in Webster where the agency had to deem whether something was in the national interest. And we submit the language here is identical or indistinguishable from both of those. Can I ask you this question? Do you have a case in which either we or the D.C. Circuit or some other court found non-reviewability where the government was a party and didn't argue for it? I don't have such a case, but I would submit that it's jurisdictional. This court has said that it's jurisdictional in the McCarthy decision, said it was a jurisdictional hurdle. How long ago was McCarthy? A couple of years ago. Just a couple of years ago? Yes, I believe it was 2016. Why would you consider that to be jurisdictional since our world has become considerably more demanding about the usage of that term in the last ten years? A fair point, Your Honor. I think it was taking its cue from the Supreme Court in the ICC decision, which also characterized it as jurisdictional, and the D.C. Circuit in the Steenholt and Claybrook decisions both held that it was jurisdictional and disposed of the case on that ground. And so for that reason, I think this court followed suit. And so for that reason, it's sort of neither here nor there whether the government raises it, although I would point out that the government didn't dispute it. And the Hobbs Act case, the D.C. Circuit one, goes directly to the Court of Appeals? I believe at least one of them was. Okay. I believe at least one of them was. Has Sir ever performed a contract of comparable signs? Well, I would submit that the DOD contract certainly provides evidence of similar scope. Is it exactly the same in all four corners? No, I would submit no contract would be exactly the same. But in terms of the scope of it, we know the DOD contract is something around $4.6 billion. We know here the exact amount is not public, but we know it is billions. And certainly the types of services that are provided are very similar, whereas Clinicom has not shown that. But to get back to the reviewability point, and I would forego my rebuttal time and go ahead and use whatever remaining time I have now to please the Court. Well, you have none. Okay. Final point. Final point. This was a matter that Congress left to the political accountability, not to the judicial accountability, and we submit that that's exactly what happened when Congress passed the appropriation just recently to fund this very program. Thank you. Thank you. I'll briefly address the issue of reviewability. As the Claims Court recognized, FAR 1.704 requires the agency to clearly and convincingly justify. Justify whom? Obviously, this regulation itself recognizes that someone is going to review it. The Administrative Disputes Resolution Act provides for review of agency procurement decisions as to whether they relate to violations of statute or regulation. So, it can be reviewable. It should be reviewed, and that's why the VA probably didn't object on the reviewability issue earlier. The evidence concerning the DOD case, the DOD rollout in the administrative record before this Court is limited. It has a total number, but at least at the time of the decision by the Court of Federal Claims, that had not been rolled out everywhere. And I don't know that there is any evidence that shows that Cerner has done this DOD-wide. The considerations that the VA has, it says it has with… Are you disputing that? That it would be large? That rolling out to DOD would be large? No, sir. I don't dispute that rolling out DOD-wide would be large or that the VA's comment, the former Secretary of the VA's comment that the VA one would be larger. I don't dispute either of those. I just point out that I don't believe there's anything in the record that has been completed which would go to Cerner's qualifications. My point earlier was no one has done this yet. So, to put Clinicomp to a standard when you have no solicitation and Cerner themselves hasn't done it is an incorrect evaluation. Clinicomp is a qualified bidder and should have the opportunity to put in a proposal. It may not win, but the VA's concerns that it's raised about whether Clinicomp could do this would be evaluated in a full competition. One of the non-trivial… I probably just missed it, but this is the first I remember hearing that Cerner isn't fulfilling a contract with the DOD. The point, Your Honor, is that it was not completed. They're doing it, are they not? They said that they were rolling it out. That's what is in the administrative record, as I recall, Your Honor. Are they present operating at the DOD from the record? From the record, I don't believe the record establishes they are doing it across DOD. Are they doing it within DOD? I believe they are doing some of the services. Something like 1,000? Your Honor, I don't believe so. I think they were rolling it out. Leidos is the prime. Cerner is the sub. And the administrative record established, I believe, that they were rolling it out in one particular region first to try it out. I don't know the status of that now. My understanding is it hasn't been rolled out. That's not in the record, Your Honor. Clinicomp is a qualified bidder. What they are required to establish for standing is non-trivial competitive injury. They will suffer economic injury because some of their work will be taken away from them and given to Cerner, and they were not given an opportunity to bid on a prospective future contract. Your time has expired, so if you want to make one quick point. Thank you, Your Honor. My point would be that weeks should apply, that a non-trivial competitive injury has occurred, and that there is a procedural problem here, and that is that this was not competed and that the court should grant permanent injunctive relief precluding the award, and then Clinicomp and everyone could follow the rules of the Competition and Contracting Act and provide a proposal for the services. Thank you. Thank you. Judge Wellick had a final question for Cerner. What's the status of Cerner's DOD contract? Are they doing it or aren't they? They are. They're currently rolling it out. It has been rolled out, I believe, in Seattle or in that region, and there's a schedule to roll it out in various stages, so they are doing it. Okay. So your opposing counsel is correct in this statement? Yes. Okay. Thank you. Thank you. We thank both sides. The case is submitted. That concludes our proceeding for this morning. All rise.